Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD VANDUNK,<br><br>  Plaintiff,<br><br>  v.<br><br>HD SUPPLY HOLDINGS, INC., JOSEPH J. DEANGELO, KATHLEEN J. AFFELDT, PETER A. DORSMAN, STEPHEN J. KONENKAMP, MILFORD W. MCGUIRT, PATRICK R. MCNAMEE, SCOTT OSTFELD, CHARLES W. PEFFER, JAMES A. RUBRIGHT, and LAUREN TAYLOR WOLFE,<br><br>  Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff Ronald VanDunk ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against HD Supply Holdings, Inc. ("HD Supply" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the

1

"Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of HD Supply by The Home Depot, Inc. ("Home Depot") and Coronado Acquisition Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Home Depot.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company's locations were in this District during the negotiation of the Proposed Transaction.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of HD Supply common stock.

7. Defendant HD Supply operates as an industrial distributor in North America. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "HDS."

8. Defendant Joseph J. DeAngelo ("DeAngelo") is the President, Chief Executive Officer, and Chairman of the Board of the Company. Defendant DeAngelo served as Executive Vice President and Chief Operating Officer of Home Depot from January 2007 through August 2007.

9. Defendant Kathleen J. Affeldt ("Affeldt") is a director of the Company.

10. Defendant Peter A. Dorsman ("Dorsman") is a director of the Company.

11. Defendant Stephen J. Konenkamp ("Konenkamp") is a director of the Company.

12. Defendant Milford W. McGuirt ("McGuirt") is a director of the Company.

13. Defendant Patrick R. McNamee ("McNamee") is a director of the Company.

14. Defendant Scott Ostfeld ("Ostfeld") is a director of the Company.

15. Defendant Charles W. Peffer ("Peffer") is a director of the Company.

16. Defendant James A. Rubright ("Rubright") is a director of the Company.

17. Defendant Lauren Taylor Wolfe ("Wolfe") is a director of the Company.

18. Defendants DeAngelo, Affeldt, Dorsman, Konenkamp, McGuirt, McNamee, Ostfeld, Peffer, Rubright, and Wolfe are collectively referred to herein as the "Individual Defendants."

19. Defendants HD Supply and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **Background of the Company**

20. HD Supply is one of the largest industrial distributors in North America. The Company serves hundreds of thousands of customers, which include contractors, maintenance professionals, industrial businesses, and government entities.

21. Home Depot has close ties to HD Supply, having initially acquired the business in 1997 before selling it to a group of private equity firms in 2007.

22. In 2013, HD Supply completed an initial public offering at a price of $18.00 per share. In fiscal years 2014 and 2015, Home Depot and three private equity firms sold their remaining original investment in HD Supply.

B. **The Proposed Transaction**

23. On November 16, 2020, HD Supply issued a press release announcing that it entered into a definitive agreement with Home Depot to be acquired (the "Merger Agreement"). Under the Merger Agreement, Home Depot would commence a tender offer, through a wholly-owned subsidiary, to acquire all of the outstanding shares of HD Supply common stock for $56.00 per share in cash. The press release states, in pertinent part:

> **HD Supply Holdings, Inc. Announces Agreement to be Acquired by The Home Depot, Inc.**
>
> ATLANTA, Nov. 16, 2020 (GLOBE NEWSWIRE) -- HD Supply Holdings, Inc. (NASDAQ: HDS), one of the largest wholesale distributors in North America, today announced that The Home Depot, Inc., the world's largest home improvement retailer, has entered into a definitive agreement to acquire HD Supply. Under the terms of the agreement, The Home Depot, Inc. has agreed to commence a tender offer, through a wholly-owned subsidiary, to acquire all of the outstanding shares of HD Supply common stock for $56 per share in cash. The Boards of Directors of both The Home Depot, Inc. and HD Supply have unanimously approved the terms of the agreement, and the Board of Directors of HD Supply has resolved to recommend that shareholders accept the offer, once it is commenced. The acquisition is structured as an all-cash tender offer for all outstanding issued

common stock of HD Supply followed by a merger in which remaining shares of HD Supply would be converted into the same U.S. dollar per share consideration as in the tender offer. The acquisition is expected to be completed during The Home Depot, Inc.'s fiscal fourth quarter, which ends on January 31, 2021 and is subject to applicable regulatory approval and customary closing conditions.

"The Board and I believe the strategic acquisition by The Home Depot, Inc. will create significant benefits for our customers, associates, and shareholders," stated Joe DeAngelo, Chairman and CEO of HD Supply. "We look forward to working together to deliver the safest, most dependable and innovative customer experience to the living space maintenance professional."

**Advisors**

Goldman Sachs & Co. LLC is acting as financial advisors and Jones Day is acting as legal advisor to HD Supply in connection with the transaction.

**About The Home Depot, Inc.**

The Home Depot, Inc. is the world's largest home improvement specialty retailer, with 2,295 retail stores in all 50 states, the District of Columbia, Puerto Rico, U.S. Virgin Islands, Guam, 10 Canadian provinces and Mexico. In fiscal 2019, The Home Depot, Inc. had sales of $110.2 billion and earnings of $11.2 billion. The Company employs more than 400,000 associates. The Home Depot, Inc.'s stock is traded on the New York Stock Exchange (NYSE: HD) and is included in the Dow Jones industrial average and Standard & Poor's 500 index.

**About HD Supply**

HD Supply is one of the largest wholesale distributors in North America. The company provides a broad range of products and value-add services to approximately 300,000 customers with leadership positions in the living space maintenance, repair and operations sector. Through approximately 44 distribution centers, across 25 states and two Canadian provinces, the company's approximately 5,500 associates provide localized, customer-tailored products, services and expertise. For more information, visit **www.hdsupply.com**.

24. On November 24, 2020, the Company filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

5

### C. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions

25. The Solicitation Statement, which recommends that HD Supply shareholders tender their shares to Merger Sub in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

26. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background of the Offer; (ii) Reasons for the Recommendation; (iii) Opinion of Goldman Sachs & Co. LLC; and (iv) Certain Unaudited Prospective Financial Information.

27. The tender offer in connection with the Proposed Transaction is set to expire at midnight (i.e., one minute after 11:59 p.m.), New York City time, on December 23, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning the Company's Financial Projections

28. The Solicitation Statement omits material information concerning the Company's financial projections.

6

29. The Solicitation Statement provides that "[c]ertain non-public projected financial data relating to HD Supply for the fiscal years 2020 through 2024 was prepared by or at the direction of management of HD Supply (the "Forecasts")."

30. The Solicitation Statement provides a purported summary of the Forecasts.

31. The Solicitation Statement, however, fails to disclose the following concerning the Forecasts: (1) all line items underlying (i) Adjusted EBITDA, (ii) Free Cash Flow, and (iii) Unlevered Free Cash Flow; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP financial metrics.

32. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

33. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning Goldman Sachs' Analyses**

34. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Goldman Sachs.

35. The Solicitation Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and

7

assumptions underlying the range of illustrative multiples of EV/NTM Adj. EBITDA of 11.0x to 13.0x and illustrative discount rate of 7.50%; (2) the net debt of HD Supply; and (3) the number of fully diluted outstanding shares of HD Supply.

36. The Solicitation Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates ranging from 6.00% to 7.00%, EV / Adjusted EBITDA range of 11.5x to 13.5x, and implied perpetuity growth rates ranging from 0.2% to 2.0%; (2) all line items underlying the unlevered free cash flow for HD Supply for the six months ended January 31, 2021 and the fiscal years ending January 31, 2022 through January 31, 2025; (3) the range of illustrative terminal values for HD Supply; (4) the net cash of HD Supply; and (5) the number of fully diluted outstanding shares of HD Supply.

37. With respect to Goldman Sachs' "*Premia Analysis*," the Solicitation Statement fails to disclose each transaction and the individual premiums paid therein.

38. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to HD Supply shareholders. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, HD Supply shareholders are unable to fully understand Goldman Sachs' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

39. The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

40. The Solicitation Statement provides that, on October 20, 2020, the Company was "engaged in a high-level discussion" with representatives of Party A concerning "possible synergy opportunities between the two companies[.]"

41. The Solicitation Statement further provides that, on October 30, 2020, Party A delivered an indication of interest to acquire HD Supply for a value between $48 and $50 per share. HD Supply's Chief Financial Officer then purportedly informed Party A that Party A would need to increase its offer and proposed the parties enter into a confidentiality agreement to provide financial and operational information.

42. According to the Solicitation Statement, "[o]n October 31, 2020, HD Supply executed a confidentiality agreement with Party A and began providing financial and operational information."

43. Shortly thereafter, on or around November 15, 2020, HD Supply and Home Depot entered into the Merger Agreement.

44. The Solicitation Statement fails to disclose all the terms of the confidentiality agreement with Party A, including whether such agreement contained a standstill provision with a "don't ask, don't waive" (DADW) provision (including its time of enforcement) that would preclude Party A from making a superior offer for the Company.

45. Without this information, HD Supply shareholders may have the mistaken belief that Party A is or was permitted to submit a superior proposal for the Company, when in fact it is or was contractually prohibited from doing so. This information is material because a reasonable

9

HD Supply shareholder would want to know, prior to tendering their shares in connection with the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal for the Company.

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

47. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

49. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

50. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

51. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

52. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

53. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

54. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

55. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

57. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

58. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and

11

>the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

59. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

>Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

60. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

61. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

62. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

63. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

**COUNT III**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

64. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

66. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains

the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

68.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

69.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C. Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 30, 2020                    Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
            zhalper@halpersadeh.com

*Counsel for Plaintiff*